IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CLARA MOLLY GARRETT**, | ) | |
| **CHEYENE PAIGE MABE**, | ) | |
| **TONYA GAIL QUALLS**, and | ) | |
| a **CLASS** of similarly-situated | ) | |
| persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| **SHERIFF ODDIE SHOUPE** | ) | |
| in his individual capacity, | ) | COMPLAINT—CLASS ACTION |
| **DONNA DANIELS**, in her | ) | |
| individual capacity, | ) | |
| **JUDGE SAM BENNINGFIELD,** in | ) | JURY TRIAL DEMANDED |
| his individual capacity, | ) | |
| **WHITE COUNTY, TENNESSEE,** | ) | |
| and | ) | |
| **ANDREA FOX,** in her official | ) | |
| capacity as Director of the White | ) | |
| County Health Department, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT—CLASS ACTION
## FOR EQUITABLE AND COMPENSATORY RELIEF

Clara Garrett, Cheyene Mabe, and Tonya Qualls file this action

individually and on behalf of a class of similarly-situated persons in accordance

with 42 U.S.C. § 1983, Tennessee State Law, and Rule 23 of the Federal Rules of

1

Civil Procedure to vindicate their state law rights, and their Constitutional

Rights, including their Constitutional Rights under the Fourteenth Amendment.

## PRELIMINARY STATEMENT

1.

The starting point for this lawsuit is the undeniable right granted to the

people of the United States by our Constitution, to be free from undue and

unnecessary government intrusion/coercion when making decisions about

reproductive health and procreation. Said freedom, in the area of birth control

implants and vasectomies, is generally referred to as voluntary consent. Make no

mistake, Defendant Sheriff Shoupe had the ability to procure voluntary consent

from the human beings under his custody and control by simply providing those

human beings with information about birth control implants and vasectomies,

and then simply tell said persons, such as Ms. Garrett, Ms. Mabe, and Ms. Qualls,

"if after consideration of the information provided, if you want to receive an

implant that will prevent you from having children for three to five years, let me

know." Shoupe didn't do that; Shoupe didn't permit voluntary consent—consent

free of governmental coercion—because Shoupe knew full well that the chance

that a human being incarcerated for a misdemeanor would simply say, "Hey, I

want an implant while I am here that will prevent me from having children for three to five years" was extraordinarily unlikely.

2.

So Shoupe, wishing to reach his Eugenics goal, chose to offer the one thing that means the most to a human being who is incarcerated behind bars: Freedom. Offering freedom in exchange for a long-lasting birth control implant is not only unnecessary—if the goal is to obtain true voluntary consent—it is also unconstitutional, as being impermissibly coercive in the area of the constitutional rights of Ms. Garrett, Ms. Mabe, and Ms. Qualls to be free of coercion while making decisions about their ability to procreate.

3.

Furthermore, any contention by Shoupe that he and his agents did not approve and promote this modern-day eugenics program is belied by the facts. A clear **45 days** (or more) before Defendant Benningfield entered an Order that permitted certain White County Jail inmates to reduce their sentence by thirty-days in exchange for vasectomies (for men) or birth control implants (for women), Shoupe had already condoned and approved the exchange of birth control implants for a thirty-day sentence reduction for at least one woman under his care and custody—and the implant was injected into this female's arm

3

**45 days** before Defendant Benningfield's Order *at Shoupe's jail*.[1] On top of that, the Order entered by Defendant Benningfield absolutely does not command any government official, such as Shoupe, to promote the subject program; instead, the Order simply says that certain persons who agree to receive a Nexplanon implant (for women) or a vasectomy (for men), for example, can receive a thirty-day jail sentence reduction. That fact highlights two important points, inter alia:

1. Shoupe was not under court order to promote and facilitate this program *at his jail*; and

2. Shoupe could have easily told Benningfield that when Benningfield, himself, ordered a jail-time sentence, Judge Benningfield and his court deputies could enroll people into this "program" *at the court*, without the assistance of Shoupe's jail employees, mindful that Shoupe began the program at least a full **45 days** or more before the subject court order.

4.

---

[1] In addition, even at this initial stage of this litigation, Plaintiffs have already determined that a full ten days before Defendant Benningfield's Order was issued, *at least* one other female (Ms. Christel Ward) received a Nexplanon implant in exchange for the offer of a thirty-day reduction in jail time.

4

Quite simply, the facts demonstrate a plausible (if not probable) claim that Shoupe created this program, and at the very least, Shoupe condoned and ratified this program, and as result, Ms. Garrett, Ms. Mabe, and Ms. Qualls's constitutional rights to substantive due process have been violated, along with numerous other human beings who elected freedom over their ability to procreate. Stated in another way, Ms. Garrett, Ms. Mabe, and Ms. Qualls (and many others) had the right to refuse a Nexplanon implant, without being punished in the form of Shoupe denying them a thirty-day reduction in their sentence for refusing to have Nexplanon implanted in their arms—while providing those who agreed to an implant thirty-days off their misdemeanor sentence.

<u>**JURISDICTION AND VENUE**</u>

5.

Jurisdiction is proper under 28 U.S.C. **§** 1331 and 1343(a)(4), as well as under 42 U.S.C. § 1983. And Venue is proper under 28 U.S.C. **§** 1391(b) and on the supplemental jurisdiction of this Court to adjudicate claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 6.

Ms. Garrett, Ms. Mabe, and Ms. Qualls were free citizens at the time they filed this Complaint and thus they had no mandate to exhaust any jail grievance procedure prior to filing this Complaint.

## THE PARTIES

### A. Ms. Clara Molly Garrett, Plaintiff

### 7.

Ms. Garrett is a resident of Tennessee and competent to stand trial to defend all claims she has made against these Defendants.

### B. Ms. Cheyene Paige Mabe, Plaintiff

### 8.

Ms. Mabe is a resident of Tennessee and competent to stand trial to defend all claims she has made against these Defendants.

### C. Ms. Tonya Gail Qualls, Plaintiff

### 9.

Ms. Qualls is a resident of Tennessee and competent to stand trial to defend all claims she has made against these Defendants.

**D. Sheriff Oddie Shoupe, Defendant**

10.

At all times relevant to this Complaint, Defendant Oddie Shoupe was a United States citizen, a Tennessee resident, and the sworn Sheriff of the White County Sheriff's Office. In his capacity as Sheriff, Shoupe was the final policy maker for White County with respect to all health programs in which White County Jail inmates participated. Sheriff Shoupe ratified, approved, and implemented the policy of permitting a thirty-day reduction in jail time in exchange for inmates under his custody and care undergoing either a vasectomy (for men), or Nexplanon birth-control implant (for women).

11.

At all times relevant, Shoupe had the independent authority to refuse, on behalf of the jail and the County, implementation of the thirty-day reduction program because the subject Court Order did not mandate Shoupe to implement that program. Shoupe received the subject Court Order because the White County Sheriff, Shoupe, is conspicuously carbon copied on the subject Court Order. (See Ex. 1.)

12.

At all relevant times to this Complaint, Defendant Shoupe was acting under the color of state law. At all relevant times, Defendant Shoupe was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Shoupe was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Plaintiffs are using both Tennessee state law and 42 U.S.C § 1983 as the vehicle to sue Shoupe in his individual capacity regarding both state and federal claims.

**E. Donna Daniels, Defendant**

13.

At all times relevant to this Complaint, Defendant Donna Daniels was a United States citizen, a Tennessee resident, and the sworn Deputy of the White County Sheriff's Office. Daniels also ratified, approved, and implemented the policy of permitting a thirty-day reduction in jail time in exchange for inmates under her custody and care undergoing either a vasectomy (for men), or Nexplanon birth-control implant (for women).

8

14.

At all relevant times to this Complaint, Defendant Daniels was acting under the color of state law. At all relevant times, Defendant Daniels was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Daniels was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Plaintiffs are using both Tennessee state law and 42 U.S.C § 1983 as the vehicle to sue Daniels in her individual capacity regarding both state and federal claims.

**F. White County, Tennessee, Defendant**

15.

White County is a political subdivision of the State of Tennessee and among its other functions operates and maintains a law enforcement agency, known as White County Sheriff's Office, and the Tennessee Department of Health. White County has an obligation to ensure the constitutionality of all health programs in which inmates at White County Jail participate, and to achieve this objective, at all times relevant, White County established or delegated to Defendant Shoupe the responsibility as final policy maker for White

9

County of ratifying, establishing and implementing policies, practices, procedures and customs regarding said health programs.

16.

White County does not have immunity for violating the civil rights of its citizens and has waived sovereign immunity for the acts and omissions of its employees arising out of, and in the course and scope of, their employment. At all times relevant, White County was acting under color of state common and statutory law. The current County executive, Denny Wayne Robinson, is the agent for service of process of this Complaint and Mr. Robinson can be served at 1 East Bockman Way (Courthouse), Room 205, Sparta, TN 38583.

**G. Judge Sam Benningfield**

17.

Judge Sam Benningfield was, at all times relevant, the Judge who entered the Order represented as Exhibit 1, and currently serves as a judge of White County General Sessions Court. Shoupe approached Benningfield about his already implemented jail program of providing a thirty-day reduction in jail time in exchange for White County inmates agreeing to participate in a form of sterilization whether by vasectomy or Nexplanon, *inter alia*. Shoupe requested

Benningfield to enter an order judicially solidifying his on-going program and on May 15, 2017 Benningfield entered an order solidifying the program.

18.

At all relevant times to this Complaint, Defendant Benningfield was acting under the color of state law. At all relevant times, Defendant Benningfield was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Benningfield was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Plaintiffs are using both Tennessee state law and 42 U.S.C § 1983 as the vehicles to sue Benningfield in his individual capacity regarding both state and federal claims.

**H. Andrea Fox, Defendant**

Andrea Fox is the Director of the White County Health Department, which is a division of the State of Tennessee Department of Health, and Defendant Fox is being sued in her official capacity. Defendant Fox, as Director of the White County Health Department, has an obligation to ensure the constitutionality of all health programs which are offered to inmates at White County Jail, and to achieve this objective, at all times relevant, Tennessee Department of Health established or delegated to Defendant Fox the responsibility as final policy

maker for White County Health Department of ratifying, establishing and implementing policies, practices, procedures and customs regarding said health programs.

19.

White County Health Department does not have immunity for claims solely seeking injunctive relief for conduct that violated the civil rights of its citizens and has waived sovereign immunity for the acts and omissions of its employees arising out of, and in the course and scope of, their employment. At all times relevant, White County Health Department was acting under color of state common and statutory law. Defendant Fox can be served at White County Department of Health, 135 Walker Street, Sparta, TN 38583.

## RELEVANT FACTS

### A. Shoupe had knowledge that a Sheriff, in neighboring Putnam County, had implemented a program just like Shoupe's at the Putnam County Jail

20.

Prior to Shoupe condoning, promoting and implementing the exchange of Nexplanon implants and vasectomies for thirty-day reductions in jail time, he knew that Putnam County's sheriff had sanctioned Nexplanon implants and vasectomies in exchange for thirty-day reductions in jail time for the human beings under his custody and control at the Putnam County Jail.

21.

In August of 2015, in Putnam County Jail, Plaintiff Qualls was offered a thirty-day reduction in jail time in exchange for having a Nexplanon implant implanted in her body, and Qualls received the Nexplanon implant in order to receive said promised thirty-day reduction in jail time.

22.

The Putnam County Jail program of pressuring its female inmates (such as Ms. Qualls) to undergo Nexplanon implants in exchange for thirty-day reductions in their jail time had been ongoing for at least 1.5 years before January 1, 2017.

23.

Shoupe knew about Putnam County's Jail program of pressuring its inmates to undergo Nexplanon implants and vasectomies in exchange for a thirty-day reduction in jail time, because Putnam County's Sheriff told Shoupe about the program prior to Shoupe pressuring female inmates (such as Ms. Garrett, Ms. Mabe, and Ms. Qualls) under his custody and care to undergo Nexplanon implants in exchange for a thirty-day reduction in jail time.

24.

Regarding the Putnam County Jail program of pressuring inmates to undergo Nexplanon implants and vasectomies in exchange for a thirty-day reduction in jail time, there was no Court order offering the program.

25.

Shoupe began his program of having inmates under his care and custody pressured into undergoing Nexplanon implants in exchange for thirty-day reductions in their jail time at least a full **45 days** before Judge Benningfield's subject court order represented as Exhibit 1 to this Complaint.

**B. The Court Order**

26.

On May 15, 2017 Judge Sam Benningfield issued a Standing Order that stated the following:

> "For good cause shown including judicial economy and the administration of justice, it is ORDERED any White County inmate serving a sentence for the General Sessions Court who satisfactorily completes the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program be given two (2) days credit toward completion of his/her jail sentence. Any such female inmate who receives the free Nexplanon implant or any such male inmate who has the free vasectomy as a result thereof shall be given an additional thirty (30) days credit toward completion of his/her jail sentence."

**C. Defendant Shoupe's general authority regarding White County Jail and White County Sheriff's Office**

27.

At all times relevant to this Complaint, Sheriff Shoupe was the Sheriff of White County Sheriff's Office.

28.

At all times relevant to this Complaint, Sheriff Shoupe oversaw the operations of the White County Jail.

29.

At all times relevant to this Complaint, there existed no higher-ranking employee who is employed by the White County Sheriff's Office than Sheriff Shoupe.

30.

At all times relevant to this Complaint, there existed no higher-ranking employee who is employed by the White County Jail than Sheriff Shoupe.

31.

At all times relevant to this Complaint, Sheriff Shoupe had the authority to discharge any employee from their employment with the White County Jail.

At all times relevant to this Complaint, Sheriff Shoupe had the authority to discharge any employee from their employment with the White County Sheriff's Office.

### D. Defendant Shoupe requests Judge Benningfield file an Order to legitimatize his program

33.

Ms. Qualls had Nexplanon implanted in her arm on March 31, 2017 at White County Jail by Nancy Sibley, a White County Health Department official, with Donna Daniels present.

34.

*The day, March 31, 2017 that Ms. Qualls had Nexplanon placed in her arm represents a full 45 days prior to Judge Benningfield's Order represented by Plaintiffs' Exhibit 1*.

35.

Ms. Christel Ward had Nexplanon implanted in her arm on May 5, 2017 at White County Jail by Nancy Sibley, a White County Health Department official, with Donna Daniels present.

36.

*The day, May 5, 2017 that Ms. Ward had Nexplanon placed in her arm represents a full ten days prior to Judge Benningfield's Order represented by Plaintiffs' Exhibit 1*.

37.

Prior to Judge Benningfield's May 15, 2017 Order, Shoupe knew that inmates under his care and custody at White County Jail had agreed to vasectomies/Nexplanon injections in exchange for a thirty-day jail sentence reduction.

38.

Shoupe approached Benningfield long before Benningfield's May 15, 2017 order and requested Benningfield to enter an order based on the program he had already implemented within White County Jail, the same program that resulted in Ms. Qualls getting the subject Nexplanon injected into her arm on March 31, 2017 and Ms. Ward getting the subject Nexplanon injected into her arm on May 5, 2017.

39.

Defendant Shoupe requested Judge Benningfield to establish a standing order regarding a thirty-day reduction in jail time in exchange for White County

inmates subjecting themselves to a form of birth control implants or sterilization such as women implanting Nexplanon into their bodies and men subjecting themselves to vasectomies.

40.

White County Jail inmates, including Ms. Qualls and Ms. Ward, had Nexplanon injected into their arms in exchange for a promised thirty-day jail time reduction prior to Judge Benningfield's order –represented as Exhibit 1 to this Complaint—being filed on May 15, 2017.

41.

In his capacity as Sheriff, Shoupe was the final policy maker for White County with respect to all health programs in which White County Jail inmates participated.

42.

The Standing Order represented as Exhibit 1 to this Complaint does not mandate that Sheriff Shoupe request inmates under his custody, care, and control to permit a government official to perform a Nexplanon implant on women inmates or a vasectomy on male inmates in exchange for a thirty-day reduction of their jail sentences.

18

43.

The Standing Order represented as Exhibit 1 to this Complaint does not mandate that Sheriff Shoupe tell inmates under his custody, care, and control that they should permit a government official to perform Nexplanon implants or vasectomies in exchange for a thirty-day reduction of their jail sentences.

44.

Sheriff Shoupe had the independent authority to disapprove all promotion—in any manner—of inmates under his custody, care, and control permitting a government official to perform Nexplanon implants on female inmates or vasectomies on male inmates in exchange for a thirty-day reduction in their jail sentences.

45.

Sheriff Shoupe ratified, approved, and implemented a jail policy of permitting a thirty-day reduction in jail time in exchange for inmates under his custody, care, and control undergoing either a vasectomy (for men), or birth-control implant (for women).

**E.  Shoupe's Authority with respect to permitting employees of the White County Health Department to enter White County Jail**

46.

In order to receive a thirty-day reduction in a jail sentence, Plaintiffs and other similarly-situated inmates had to attend a class in which members from the White County Department of Health made a presentation about Nexplanon implants and "drug addicted babies," while Lieutenant Donna Daniels—a subordinate of Shoupe's—was present.

47.

At all times relevant, Shoupe had the authority to prevent any member from the White County Department of Health from entering White County Jail.

48.

Shoupe knowingly permitted members from White County Health Department to enter White County Jail to make a presentation, which included information about Nexplanon implants and "drug addicted babies," to Plaintiffs and other inmates.

**F.  Shoupe's implementation of his unconstitutional policy**

49.

Shoupe ordered his subordinate Donna Daniels to verbally encourage all women, including Ms. Garrett, Ms. Mabe, and Ms. Qualls, incarcerated at White

County Jail to permit a government official to perform a Nexplanon implantation on them in exchange for a thirty-day reduced jail sentence.

50.

Donna Daniels, acting on Shoupe's command, approached the female "pods" where Ms. Garrett, Ms. Mabe, and Ms. Qualls were housed and actively encouraged Ms. Garrett, Ms. Mabe, and Ms. Qualls, and all other female inmates, to permit a government official to perform a Nexplanon implantation on them in exchange for a thirty-day reduction in their sentences.

51.

Ms. Garrett, Ms. Mabe, and Ms. Qualls and other female inmates who were encouraged to permit a government official to perform a Nexplanon implantation on them in exchange for a thirty-day reduced sentence, had to sign a "sign up" sheet prior to being implanted with a Nexplanon implant.

52.

By Shoupe's order, Donna Daniels presented Shoupe with the sign-up sheets referred to in the preceding paragraph, that contained Ms. Garrett, Ms. Mabe, and Ms. Qualls, and Shoupe approved each person, along with Ms. Garrett, Ms. Mabe, and Ms. Qualls, whose name appeared on the signup sheet.

21

53.

After signing the sign-up sheet, Ms. Garrett, Ms. Mabe, and Ms. Qualls attended a Department of Health Neonatal Syndrome Education (NAS) Program presentation led by Nancy Sibley, a government official from the White County Health Department, and simultaneously attended by Shoupe's subordinate, Donna Daniels.

54.

After attending the subject class about Nexplanon implant and drug babies, Donna Daniels again told Ms. Garrett, Ms. Mabe, Ms. Qualls, and other similarly-situated female inmates that they would receive thirty-day reduction in their jail sentence if they decided to undergo a Nexplanon implantation and were informed that if they did *not* agree to undergo a Nexplanon implantation then they would *not* receive a thirty-day sentence reduction on their jail time.

55.

After attending the subject class about Nexplanon implants and drug babies, Ms. Garrett, Ms. Mabe, Ms. Qualls, and other similarly-situated female inmates decided to undergo a Nexplanon implantation in exchange for a thirty-day sentence reduction on their jail time.

56.

During the NAS Program, and in the presence of White County Health Department employees, Donna Daniels told Plaintiffs and other inmates present that they would receive a thirty-day jail sentence reduction if they got a Nexplanon implant to be performed by the White County Health Department.

57.

The White County Health Department employees presenting the NAS Program heard Donna Daniels tell the inmates present that they would receive a thirty-day sentence reduction if they received a Nexplanon implant from the White County Health Department, and these White County Health Department employees understood that inmates were being offered a thirty-day sentence reduction if they underwent a Nexplanon implantation performed by the White County Health Department.

## G. Shoupe wanted everyone sterilized because he thinks all inmates will give birth to drug addicted babies

58.

Prior to Ms. Garrett, Ms. Mabe, and Ms. Qualls attending the Department of Health Neonatal Syndrome Education (NAS) Program presentation, led by Nancy Sibley, a government official from the White County Health Department,

Donna Daniels told Ms. Garrett, Ms. Mabe, and Ms. Qualls that the primary reason that the White County Jail officials were pushing Ms. Garrett, Ms. Mabe, and Ms. Qualls and others to have Nexplanon implantations was to stop babies from being born addicted to drugs.

59.

Shoupe never once attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

60.

Shoupe never once attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to receive birth control implants.

61.

Shoupe never once ordered any of his subordinates to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

62.

Shoupe never once ordered any of his subordinates to identify White County Jail inmates with documented drug addiction problems as a specified

24

group that should be targeted as persons who need to receive birth control implants.

63.

Not one employee of White County, including any employee of White County Jail and White County Sheriff's Office, attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

64.

Not one employee of White County, including any employee of White County Jail and White County Sheriff's Office, attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to receive birth control implants.

**H. Shoupe teams up with the White County Health Department to double down on his theory that all White County Jail inmates will eventually give birth to drug addicted babies**

65.

In order to approve employees of the White County Health Department entering his jail to present that Department of Health Neonatal Syndrome Education (NAS) Program to Ms. Garrett, Ms. Mabe, and Ms. Qualls and other

similarly-situated female inmates—Shoupe first viewed the entire Department of Health Neonatal Syndrome Education (NAS) Program, and approved that program to be presented to Ms. Garrett, Ms. Mabe, and Ms. Qualls and other similarly-situated female inmates.

66.

Shoupe approved White County Department of Health officials' program titled the Department of Health Neonatal Syndrome Education (NAS) Program, and thus knew that NAS included a lot of information and graphics about babies born addicted to drugs and about the financial burden to the state of Tennessee to medically treat drug addicted babies.

67.

Ms. Garrett, Ms. Mabe, and Ms. Qualls, and other similarly-situated female inmates, while participating in the Department of Health Neonatal Syndrome Education (NAS) Program, viewed lots of graphic images and other material regarding babies born addicted to drugs and were also told by White County Health Department Officials—on top of being told by Donna Daniels—that the primary goal of Shoupe's jail program is to prevent babies being born addicted to drugs. Ms. Garrett, Ms. Mabe, and Ms. Qualls were also shown figures

estimating the financial burden to the state of Tennessee to medically treat drug addicted babies.

68.

Ms. Garrett, Ms. Mabe, and Ms. Qualls, while participating in the Department of Health Neonatal Syndrome Education (NAS) Program, signed a signup sheet for the jail and saw others who participated in said program sign the same sign-up sheet.

69.

Ms. Garrett, Ms. Mabe, and Ms. Qualls, while participating in the Department of Health Neonatal Syndrome Education (NAS) Program, signed a signup sheet for the Department of Health and saw others who participated in said program sign the same sign-up sheet.

70.

Ms. Garrett, Ms. Mabe, and Ms. Qualls, while participating in the Department of Health Neonatal Syndrome Education (NAS) Program, saw Shoupe's subordinate, Donna Daniels, present during the entire time that Department of Health officials made their presentation to Ms. Garrett, Ms. Mabe, and Ms. Qualls and other similarly-situated female inmates.

71.

After completing the Department of Health Neonatal Syndrome Education (NAS) Program, Ms. Garrett, Ms. Mabe, and Ms. Qualls were told by Donna Daniels that if they did not agree to receive a Nexplanon implant then they would not receive the thirty-day reduction in jail time.

72.

By threatening Ms. Garrett, Ms. Mabe, and Ms. Qualls from receiving a thirty-day jail-time reduction, Shoupe made it clear to Ms. Garrett, Ms. Mabe, and Ms. Qualls —and all other similarly-situated female inmates who agreed to participate in the subject program—that each of them would have to spend thirty-days longer in jail if they would not agree to a Nexplanon implantation.

73.

Because of the conditions communicated to Ms. Garrett, Ms. Mabe, and Ms. Qualls by Donna Daniels and enforced by Shoupe, that if they did not agree to receive a Nexplanon implant then they would not receive the thirty-day reduction in jail time, they decided to get a Nexplanon implant.

28

# I. CLASS ACTION ALLEGATIONS

74.

Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly-situated (the "Class") pursuant to Rules 23(a), 23(b)(2), and 23(b)(3).

## i.  **Class Definition**

75.

Plaintiffs seek to represent the following class:

**All persons (1) who were free at the time of the filing of this action, (2) who received a Nexplanon implant in exchange for the offer of a thirty-day reduction in jail time, and (3) who received said Nexplanon implant while incarcerated at the White County Jail at any time during the period beginning October 9, 2016 and ending July 27, 2017.**

76.

Plaintiffs reserve the right to amend the class definition if further investigation and discovery demonstrates that the class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

77.

As a result of Defendants coercing Plaintiffs and members of the proposed Class into permitting Nexplanon to be implanted in their bodies by mandating that they serve an additional thirty-days longer jail sentence if they did not receive a Nexplanon implantation in exchange for a thirty-day reduction in their jail sentence, Defendants have violated the Substantive Due Process rights of Plaintiffs and members of the proposed Class under the U.S. Constitution. On behalf of the Class, Plaintiffs seek declaratory and injunctive relief under Rule 23(b)(2) and monetary relief under Rule 23(b)(3) to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

**ii.**     **Rule 23(a) requirements are met for the proposed Class**

78.

The requirements of Rule 23(a) are satisfied by this class action.

**a. Numerosity**

79.

The information as to the size of the Class and the identity of the inmates who are in the Class is in the exclusive control of Defendants. On information and

belief, the class encompasses at least 100 female inmates domiciled in the middle Tennessee region who qualified for the subject program due to misdemeanor jail sentences. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

### b. Commonality

80.

Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class. The common answers that Plaintiffs seek are simple and will result in a common resolution for the Class. These legal and factual questions include, but are not limited to:

1. Whether requiring Plaintiffs and similarly-situated persons to serve an additional thirty-day jail sentence unless Plaintiffs and similarly-situated persons agreed to have a Nexplanon birth-control implantation violated their Substantive Due Process rights under the U.S. Constitution;

2. Whether requiring Plaintiffs and similarly-situated persons to serve an additional thirty-day jail sentence unless Plaintiffs and similarly-situated persons agreed to have a Nexplanon birth-control

implantation violated their due process rights under the Tennessee
Constitution;

3. Whether using a reduction in jail time as an incentive to undergo a
   Nexplanon implantation is unconstitutionally coercive under the
   Fourteenth Amendment of the U.S. Constitution and thus prohibited
   by law;

4. Whether using a reduction in jail time as an incentive to undergo a
   Nexplanon implantation is unconstitutionally coercive under the
   Tennessee Constitution and thus prohibited by law;

5. Whether using a reduction in jail time as an incentive to undergo a
   Nexplanon implantation is unconstitutionally intrusive into the
   fundamental right to privacy and autonomy regarding personal
   procreational decisions guaranteed under the Tennessee Constitution
   and thus prohibited by law; and

6. Whether voluntary consent can be given in the context of being offered
   a reduction in jail time in exchange for agreeing to a Nexplanon birth-
   control implantation.

### c. Typicality

81.

Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all Class members were qualified for the subject program, were told they would receive thirty-day sentence reduction if they permitted a Nexplanon implant to be implanted in their bodies, signed up for the Nexplanon implant, and were implanted with the Nexplanon implant, and Plaintiffs and all Class members were told that would not receive a thirty-day reduction in their jail time if they did not receive a Nexplanon implant implanted in their bodies. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

### d. Adequacy

82.

Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

83.

Plaintiffs have retained competent counsel in both civil rights and class action litigation.

84.

Plaintiffs' suit is financially supported by considerable philanthropic funding.

### iii.   Rule 23(b)(2) requirements are met for the proposed Class

85.

The requirements of Rule 23(b)(2) are satisfied by this class action.

86.

Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper. Based on the anterior facts preceding this paragraph, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

### iv.   Rule 23(b)(3) requirements are met for the proposed Class

87.

The requirements of Rule 23(b)(3) are satisfied by this class action.

88.

Questions of law or fact common to Class members predominate over any questions affecting only individual members because, *inter alia*, (i) each member

of the proposed Class was injured by the same Defendants under the same subject program, (ii) each member of the proposed Class was offered a thirty-day sentence reduction if she permitted a Nexplanon implant to be implanted in her body in White County Jail, (iii) each member of the proposed Class was threatened with not receiving a thirty-day sentence reduction if she did not permit a Nexplanon implant to be implanted in her body in White County Jail, and (iv) each member of the proposed Class received a Nexplanon implant as a direct result of Defendants' subject program.

89.

A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the certification of the Class will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly injured, without sacrificing procedural fairness or bringing about other undesirable results, making certification of the Class under Rule 23(b)(3) proper.

90.

No one knows who funded the subject vasectomies and Nexplanon injections because each Defendant has publicly denied funding the program.

# COUNT I

## VIOLATION OF THE FOURTEENTH AMENDMENT
## SUBSTANTIVE DUE PROCESS RIGHTS OF MS. GARRETT, MS. MABE,
## MS. QUALLS AND THE PROPOSED CLASS MEMBERS
## UNDER 42 U.S.C. § 1983
### (*Against White County and Shoupe*)

91.

Plaintiffs incorporate paragraphs 1-90 as if each were set forth verbatim herein.

92.

Based on the incorporated facts to support this Count, Shoupe and White County violated Plaintiffs' substantive due process rights to be free of outrageous government conduct such as the disdained and internationally condemned Eugenics program to which these Defendants subjected Ms. Garrett, Ms. Mabe, Ms. Qualls, and all similarly-situated persons (members of the proposed Class), in order to coerce Ms. Garrett, Ms. Mabe, Ms. Qualls, and all similarly-situated persons into implanting themselves with Nexplanon. Consequently, Plaintiffs and proposed Class members are entitled to all monetary damages permissible under law.

**COUNT II**

**VIOLATION OF MS. GARRETT, MS. MABE, AND MS. QUALLS AND THE
PROPOSED CLASS MEMBERS' FOURTEENTH AMENDMENT
PROCEDURAL DUE PROCESS RIGHTS**
(*Against Defendants Shoupe, Daniels, Benningfield, and White County*)

93.

Plaintiffs incorporate paragraphs 1-90 as if each were set forth verbatim

herein.

94.

The Tennessee General Assembly has exclusive domain over establishing

the "sentencing ranges, classes of criminal offenses, and permissible

considerations for sentencing determinations, and all other matters related to

criminal sentencing."

95.

"No statute permits a judge to modify the length of a defendant's sentence

based on whether or not that defendant has agreed to [abandon] his or her

constitutional right to reproduction freedom."

96.

"Tennessee code Ann. § 40-35-113 sets forth several expressly defined

mitigating factors that a judge may consider when determining to reduce a

sentence," and whether a defendant agree to abandon his or her right to reproductive freedom is not one of those factors.

97.

"Tennessee code Ann. § 40-35-114 sets forth several expressly defined mitigating factors that a judge may consider when determining to reduce a sentence," and whether a defendant agree to abandon his or her right to reproductive freedom is not one of those factors.

98.

None of these Defendants had authority to reduce Plaintiffs', or any similarly-situated inmates', jail time in exchange for signing up for a Nexplanon implant. Consequently, these Defendants are liable to Plaintiffs and all similarly-situated persons for violating their Procedural Due Process rights, which are protected by the Fourteenth Amendment of the U.S. Constitution, and Plaintiffs and proposed Class members are entitled to all monetary damages permissible under law.

## COUNT III

### REQUEST FOR INJUNCTIVE RELIEF
### TO REMOVE THE NEXPLANON IMPLANTS FROM THE BODIES OF
### PLAINTIFFS AND PROPOSED CLASS MEMBERS
*(Against Andrea Fox in her official capacity)*

99.

Plaintiffs incorporate paragraphs 1-90 as if each were set forth verbatim herein.

100.

Based on the incorporated facts, this Court should grant equitable relief by ordering Andrea Fox, as Director of the White County Health Department, a regional division of the Tennessee Department of Health, to remove the Nexplanon implants that were implanted in the arms of Plaintiffs and proposed Class members as part of the program through which they were offered thirty-day sentence reductions in exchange for receiving said implants. Because Plaintiffs and proposed class members were unconstitutionally and unlawfully coerced into allowing employees of the White County Health Department to implant their bodies with said Nexplanon implants, and thus their consent was not lawfully obtained, Plaintiffs will suffer irreparable harm if these implants are permitted to remain in the bodies of Plaintiffs and proposed Class members. This injunctive relief also serves the interest of public and sends a signal to all regions

39

of the Tennessee Department of Health that *birth control devices may not be surgically implanted in women's bodies without consent obtained by non-coercive means*, and that implanting women with birth control devices with the knowledge that consent was not non-coercively obtained is constitutional, unlawful, and an affront to public policy, and that all such devices implanted in women's bodies by *any regional division or office* of the Tennessee Department of Health without proper consent will be removed by the Tennessee Department of Health at its own cost.

## COUNT IV

### REQUEST FOR DECLARATORY JUDGMENT
*(Against Benningfield and Shoupe)*

101.

Plaintiffs incorporate paragraphs 1-90 as if each were set forth verbatim herein.

102.

Based on the incorporated facts, this Court should grant equitable relief by declaring the subject program unlawful, as unconstitutional under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Such a declaration serves the interest of public and if not made, similarly-situated persons to Plaintiffs will continue to serve longer jail sentences just if they refuse

to abandon their right to reproductive freedom by agreeing to undergo a Nexplanon implantation in exchange for a thirty-day reduction in jail time.

103.

Based on the incorporated facts to support this Count, these Defendants have violated the due process rights of Plaintiffs and proposed Class members under Tenn. Const. art. I § 8 by depriving them of their fundamental liberty rights regarding their procreational autonomy by offering to alter their incarcerated status. The provisions of the Tennessee Constitution, including art. I § 8, protect, *inter alia*, an individual's right to be free from unlawful deprivation of her liberty interests in making inherently personal decisions regarding her procreational choices. By offering Plaintiffs and members of the proposed Class a thirty-day jail sentence reduction in exchange for permitting their bodies to be implanted with Nexplanon, and by threatening to withhold a thirty-day jail sentence reduction if Plaintiffs and members of the proposed Class did not permit their bodies to be implanted with Nexplanon, these Defendants systematically deprived Plaintiffs and proposed Class members' of their rights to procreational autonomy and thereby violated Tenn. Const. art. I § 8.

104.

Based on the incorporated facts to support this Count, these Defendants have violated the rights of Plaintiffs and proposed Class members under Tenn. Const. art. I § 3 by interfering with their rights of conscience and privacy regarding their procreational autonomy. The provisions of the Tennessee Constitution, including art. I § 3, protect an individual's fundamental right to make inherently personal decisions, and to act on those decisions, without government interference. By offering Plaintiffs and members of the proposed Class a thirty-day jail sentence reduction in exchange for permitting their bodies to be implanted with Nexplanon, and by threatening to withhold a thirty-day jail sentence reduction if Plaintiffs and members of the proposed Class did not permit their bodies to be implanted with Nexplanon, these Defendants systematically interfered with Plaintiffs and proposed Class members' rights to procreational autonomy and thereby violated Tenn. Const. art. I § 3.

## COUNT V

### PUNITIVE DAMAGES
(*Against Defendants Shoupe and Daniels, in their respective individual capacities*)

**Based on the facts alleged in this Complaint,** Plaintiffs are entitled to punitive damages, under all applicable laws, because, *inter ali*a, Defendants

Shoupe and Daniels acted with a willful and conscience indifference to the laws that protect Ms. Garrett, Ms. Mabe, Ms. Qualls, and proposed Class members' Constitutional rights.

**COUNT VI**

**ATTORNEY FEES**

**Based on the facts alleged in this Complaint,** Ms. Garrett, Ms. Mabe, Ms. Qualls and proposed Class members are entitled to attorney fees, under all applicable laws.

**WHEREFORE**, Ms. Garrett, Ms. Mabe, Ms. Qualls and proposed Class members pray this Court for the following:

(a) That process issue and service be had on each Defendant;

(b) That this Court certify the proposed Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(c) That a jury trial be had on all issues so triable;

(d) That Plaintiffs have Judgment against Defendants for compensatory damages;

(e) That Plaintiffs recover all costs of this litigation;

(f) That Plaintiffs be awarded all other expenses in an amount to be determined at trial, including attorney fees;

(g) That Plaintiffs have Judgment against Defendants Shoupe and Daniels for punitive damages;

(h) That this Court grant the equitable and declaratory relief Plaintiffs have requested; and

(i) That Plaintiffs receive such other and further relief as this Court deems just and proper.

Respectfully submitted on this 9th day of October 2017,

By */s/ William H. Stover*
William H. Stover
TN Bar No. 020537
Stover Law Group
222 2nd Ave. North, Ste. 326
Nashville, Tennessee 37201
(615) 613-0541/(615) 613-0546 FAX
ws@wstoverlaw.com

By */s/ Mario B. Williams*
Mario B. Williams
GA Bar No. 235254
*Future Immediate Pro Hac Vice*
Nexus Caridades Attorneys, Inc.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 654-0288 / (703) 935-2453 FAX
mwilliams@nexuscaridades.com

44