# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| CLARA MOLLY GARRETT, CHEYENE PAIGE MABE, and TONYA GAIL QUALLS, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) NO. 2:17-cv-0059<br>) CHIEF JUDGE CRENSHAW |
| SHERIFF ODDIE SHOUPE, DONNA DANIELS, SAM BENNINGFIELD WHITE COUNTY, TN, and ANDREA FOX, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court are Plaintiffs' Motion to Certify Class (Doc. No. 16); a Motion to Dismiss filed by Defendants Benningfield, Daniels, Shoupe and White County (Doc. No. 21); and a Motion to Dismiss filed by Defendant Fox (Doc. No. 27).

Background

Plaintiffs are female citizens who, at the times relevant to this action, were incarcerated in the White County, Tennessee jail. Defendant Benningfield was the White County General Sessions Judge. Defendant Shoupe was the White County Sheriff, and Defendant Donna Daniels was a White County Deputy Sheriff. Defendant Fox was the Director of the White County Health Department. White County, Tennessee, is a political subdivision of the State of Tennessee. Defendants Benningfield, Shoupe and Daniels are sued in their individual capacities, and Defendant Fox is sued in her official capacity only.

Plaintiff alleges that, on May 15, 2017, Defendant Benningfield issued a "Standing Order" (Doc. No. 1-1) providing, among other things, that any White County female inmate serving a sentence for the General Sessions Court who received a free Nexplanon surgical birth control implant would be given a thirty-day credit on her sentence.[1] Plaintiffs claim that Defendant Shoupe had already, prior to Benningfield's Order, approved the exchange of birth control implants for reduced jail time for at least one female inmate. Plaintiffs each agreed to and in fact received the Nexplanon implant.[2] Plaintiffs seek to bring this action on behalf of all female inmates who received the Nexplanon implant in exchange for a thirty-day reduction in jail time at the White County jail.

Plaintiffs claim that Benningfield's Standing Order violated the United States and Tennessee Constitutions. Specifically, Plaintiffs allege that Defendants Shoupe and Daniels impermissibly coerced female inmates to have the implant procedure in exchange for jail time reduction. They seek monetary damages, injunctive relief (to have the implants removed at no cost), declaratory relief (to declare this practice unconstitutional), punitive damages and attorneys' fees.

Absent from the Complaint is this relevant fact — on July 26, 2017 Defendant Benningfield issued a Supplemental Order titled "Order Rescinding Previous Standing Order" (Doc. No. 21-1). The Court takes judicial notice of this Order because it relates directly to and indeed rescinds the Standing Order challenged in this case. The Court may consider materials that are integral to the

---

[1] Similarly, the Standing Order provided that any male inmate who had a free vasectomy would be given a thirty-day credit on his sentence.

[2] The Complaint alleges that Plaintiff Qualls also received a Nexplanon implant at the *Putnam* County Jail in August of 2015 and then received another implant at the White County Jail on March 31, 2017 (Doc. No. 1, ¶¶ 21 and 33).

Complaint, are public records, or are otherwise appropriate for the taking of judicial notice. Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005).

Likewise, the Court takes judicial notice that on May 1, 2018, Tennessee Governor Bill Haslam signed into law Senate Bill 2133, which expressly forbids conditioning the length of any criminal sentence on an inmate submitting to any form of temporary or permanent birth control, sterilization or family planning services. Therefore, the misconduct alleged in the Complaint is now illegal by statute. This action is one of four related cases in this Court challenging the constitutionality of Defendant Benningfield's Orders and the actions of White County officials related thereto.[3]

## Motion to Dismiss

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a

---

[3] The other three cases are Ward v. Shoupe, No. 2:17-cv-0047; Sullivan v. Benningfield, No. 2:17-cv-0052; and Stall v. Shoupe, No. 2:17-cv-0060.

motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Judicial Immunity and Quasi-Judicial Immunity

Judge Benningfield argues that he is entitled to absolute judicial immunity for his Standing Order. It is a well-settled principle in our system of jurisprudence that judges are generally absolutely immune from civil actions for money damages. Bright v. Gallia Cty., Ohio, 753 F.3d 639, 648 (6th Cir. 2014). Plaintiffs do not dispute this principle. Instead, they argue that Judge Benningfield may still be liable for declaratory and injunctive relief. The Complaint does not ask for injunctive relief against Defendant Benningfield, only against Defendant Fox (Doc. No. 1, Count III). Accordingly, Defendants' Motion to Dismiss with regard to Defendant Benningfield will be granted.[4]

Defendants Shoupe and Daniels also argue that they are entitled to quasi-judicial immunity because they were enforcing Judge Benningfield's Standing Order. Absolute judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune. Rodriguez v. Providence Community Corrections, Inc., 191 F.Supp.3d 758, 767 (M.D. Tenn. 2016); Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). As with judicial immunity, the Supreme Court endorsed a functional approach in determining whether an official is entitled to quasi-judicial immunity. Id. When persons are engaged in executing or enforcing a court order, such actions are intrinsically associated with a judicial proceeding. Id.

---

[4] Plaintiffs are not barred by judicial immunity from bringing their declaratory judgment claims against Defendant Benningfield, but as explained below, the claim for declaratory relief must be dismissed for other reasons.

The Complaint alleges, however, that Defendant Shoupe "and his agents" coerced inmates into having the implants at least 45 days <u>before</u> the Standing Order (Doc. No. 1, ¶ 25). The Complaint asserts that Plaintiff Qualls received her implant on March 31, 2017,[5] and the Standing Order was not entered until May 15, 2017 (Doc. No. 1, ¶¶ 26 and 33). The Court must accept the factual allegations of the Complaint, for purposes of this motion, as true. As to their actions prior to the Standing Order, Defendants Shoupe and Daniels are not entitled to quasi-judicial immunity because they could not have been implementing or acting pursuant to the Standing Order, which did not exist.

As for the actions of Defendants Shoupe and Daniels after entry of the Standing Order, Defendants argue that they were simply executing, enforcing, or carrying out the court's order. To the extent, as alleged in the Complaint, these Defendants impermissibly coerced the Plaintiffs into involuntarily consenting to the procedure, that conduct was not authorized by the Standing Order. There are factual allegations that the conduct of Defendants Shoupe and Daniels, even if they were enforcing the Standing Order, went beyond the scope of that Order and may be outside the scope of any quasi-judicial immunity. Therefore, the Court cannot find, at this time, that the actions of Shoupe and Daniels following entry of the Standing Order were quasi-judicial as a matter of law to entitle them to immunity. Plaintiffs have sufficiently alleged conduct outside the scope of quasi-judicial immunity. Defendants' Motion to Dismiss on this issue will be denied.[6]

---

[5] It is not clear from the Complaint when the other two Plaintiffs got their implants.

[6] Defendants also argue that Shoupe and Daniels had no power to reduce an inmate's sentence. The challenged action of these Defendants is the coercion, however, not the reduction in sentence, although that reduction in sentence was a part of the Standing Order that these Defendants were implementing. Indeed, there are no allegations that Plaintiffs have been injured because Defendants lack the authority to in fact reduce the terms of their sentences.

Qualified Immunity

The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). Although the defendant bears the burden of pleading this defense, the plaintiff must show that the defendant is not entitled to qualified immunity. Hayden v. Green, 640 F.3d 150, 153 (6th Cir. 2011). Determinations of qualified immunity require the Court to answer two questions: (1) whether the officer violated a constitutional right, and (2) whether that right was clearly established in light of the specific context of the case. Id.[7]

Defendants contend that Shoupe and Daniels are entitled to qualified immunity because encouraging female inmates to receive free temporary birth control in exchange for a thirty-day reduction in jail time does not violate the Fourteenth Amendment and, even if it did, it was not a "clearly established" violation at the time of the alleged misconduct. Defendants argue that Plaintiffs fail to allege sufficient facts to establish the type of "shocks the conscience" behavior that is necessary to establish a cognizable claim under the Fourteenth Amendment. Defendants also assert that the challenged program was justified by the legitimate governmental interest of preventing the birth of drug-addicted babies. At this early stage on Defendants' Motions to Dismiss, the Defendants' arguments are not persuasive.

---

[7] "The judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.

The factual allegations of the Complaint, which must be accepted as true, assert that Defendants Shoupe and Daniels offered Plaintiffs and other inmates the gift of early freedom from custody in exchange for a "long-lasting" birth control implant.[8] There are sufficient factual allegations that Defendants were impermissibly coercive when Plaintiffs gave up their constitutional rights to make decisions about their abilities to procreate. Accepting these allegations as true, a jury could find that Defendants exerted pressure sufficient to make consent to the procedures involuntary and that the behavior of Shoupe and Daniels "shocks the conscience" in violation of the Fourteenth Amendment. Defendants may dispute the severity of the alleged coercion, but factual questions such as that cannot be determined on a motion to dismiss.

Similarly, whether Defendants violated, without procedural protections, Plaintiffs' liberty interests in their rights to make personal decisions concerning birth control and procreation will depend upon the facts of the alleged coerciveness. The facts in the Complaint allege the coercive nature of Defendants' actions made Plaintiffs' decisions involuntary. Moreover, whether the coercion of inmates to receive a birth control implant in exchange for freedom thirty days early violated clearly established law also depends upon the extent of the Defendants' alleged coercion. The Court cannot find, at this time, that such behavior did *not* violate clearly established law. Especially given the privacy interests acknowledged by the Supreme Court related to procreation, the acts of Shoupe and Daniels could have violated clearly established law.[9]

---

[8] Whether the implant is better characterized as "long-lasting," as Plaintiffs contend, or "temporary," as Defendants argue, is another issue that must be determined by the trier of fact. Compare Doc. No. 1, ¶ 2 with Doc. No. 22, p. 11.

[9] See, e.g., Griswold v. State of Connecticut, 85 S.Ct. 1678 (1965) (constitution does not permit States to forbid married couple to use contraceptives); Eisenstadt v. Baird, 92 S.Ct. 1029 (1972) (extending that protection to single persons); Carey v. Population Services Int'l, 97 S.Ct.

Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights. Flagner v. Wilkinson, 241 F.3d 475, 481 (6th Cir. 2001). For these reasons, because the underlying facts surrounding the alleged coercion are disputed, the Court cannot find that Shoupe and Daniels are entitled to qualified immunity from Plaintiffs' claims. Defendants' motion on this issue will be denied.

Declaratory Relief

Defendants Benningfield and Shoupe also argue that Plaintiffs are not entitled to declaratory relief because the Complaint does not establish a real and immediate threat that they will suffer a future injury. The Declaratory Judgment Act requires an actual controversy for a court to declare the rights and other legal relations of any interested party. 28 U.S.C. § 2201. Indeed, Article III of the United States Constitution limits the jurisdiction of federal courts to hear only actual cases and controversies. United States Const. art. 3, § 2; Lyshe v. Levy, 854 F.3d 855, 857 (6th Cir. 2017); Jones v. Haynes, 2018 WL 2684310 at * 3 (6th Cir. June 5, 2018). "The federal courts are not free-range problem solvers." Hearring v. Sliwowski, 806 F.3d 864, 868 (6th Cir. 2015).

The doctrine of standing aids in defining these limits. Plaintiffs bear the burden of establishing standing with respect to each type of relief they seek. Hearring, 806 F.3d at 868. To have standing to seek declaratory relief, a plaintiff must show that he or she is subject to an actual present harm or a significant possibility of future harm. Kelley v. Shelby Cty. Bd. of Educ., 198

---

2010 (1977) (constitution places limits on State's right to interfere with person's basic decisions about family and parenthood); Planned Parenthood of Southeastern Pennsylvania v. Casey, 112 S.Ct. 2791 (1992) (woman has right to choose to have abortion before viability of fetus without undue interference from state).

F.Supp.3d 842, 849 (W.D. Tenn. 2016). A previous injury may confer standing upon a plaintiff to seek damages, but a prior injury itself does not confer standing to seek declaratory relief. Id; Grendell v. Ohio Supreme Court, 252 F.3d 828, 832 (6th Cir. 2001).

The conduct in the Standing Order has been eliminated by Judge Benningfield and made illegal by statute. Declaring his Standing Order unconstitutional would be merely an advisory opinion by the Court. The Court finds it unnecessary and also imprudent to determine the constitutionality of the Standing Order that is no longer in effect and the substance of which is legally prohibited. Jones v. Haynes, 2018 WL 2684310 at * 4 (6th Cir. June 5, 2018). The Court declines to order such relief.[10]

Plaintiffs argue that the voluntary cessation of conduct does not deprive the court of the power to determine its legality. Here, there is more than voluntary cessation, however. Here, the Tennessee's General Assembly has passed a state statute, in effect now, that prohibits any return to the allegedly illegal conduct. Plaintiffs' request for declaratory relief lacks merit because there is not an actual and continuing controversy between the parties that would cause an immediate and real threat of injury to them. Freeman v. Gay, 2012 WL 2061557 at * 10 (M.D. Tenn. June 7, 2012).

As a matter of law, the Court concludes that Defendants have carried their burden[11] to show that the allegedly wrongful conduct in this case is not reasonably likely to recur. Therefore, there

---

[10] Plaintiffs do not seek injunctive relief in Count III of the Complaint against Defendants Shoupe, Daniels or White County (Doc. No. 1, Count III). In any event, there is no longer alleged misconduct to enjoin and Plaintiffs cannot show they are in imminent danger of irreparable harm.

[11] In Friends of the Earth, Inc. v. Laidlaw Envionmental Servs., Inc., 120 S.Ct. 693, 708 (2000), the Court stated that a defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

is no case or controversy for the requested declaratory relief. Defendants' Motion to Dismiss the claim for declaratory relief will be granted.

## Defendant Fox

Under state law, Defendant Fox, as the county health director, was appointed by the Tennessee Commissioner of Health and is an employee of the State of Tennessee. Tenn. Code Ann. § 68-2-603. Defendant Fox is being sued in her official capacity only. A suit against an individual in her official capacity is the equivalent of a suit against the governmental entity. Burns v. Robertson Cty., 192 F.Supp.3d 909, 919 (M.D. Tenn. 2016). Therefore, the claim against Defendant Fox is actually a claim against the State of Tennessee.

Defendant Fox argues that, as an employee of the state sued in her official capacity, she is entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Amendment provides immunity for states from private suits in state or federal courts. Barton v. Summers, 293 F.3d 944, 948 (6th Cir. 2002); Fields v. Strode, 2018 WL 328128 at * 4 (W.D. Ky Jan. 8, 2018). There are three generally recognized exceptions to this rule. First, a state may consent to suit. Barton, 293 F.3d at 948. Second, Congress may abrogate a state's immunity. Id. Third, a federal court may issue an injunction ordering prospective relief against a state official in order to prevent future constitutional violations. Id. When an action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit. Id. at 949. Relief should not be granted if the relief is tantamount to an award of damages for a past violation of federal law. Id.; Barachkov v. Fuca, 2016 WL 3900827 at * 2 (E.D. Mich. July 19, 2016).

The only Count in the Complaint against Defendant Fox is Count III, which seeks injunctive relief to remove the Nexplanon implants from the bodies of the Plaintiffs at the Health Department's cost.[12] Therefore, Plaintiffs' claims fall within the exception for prospective injunctive relief against a state official. See Barton, 293 F.3d at 948. Fox does not dispute Plaintiffs' entitlement to the free implant removals, however. She asserts that Plaintiffs have already been offered the injunctive relief they seek, removal of the implants at no cost to them, so there is no actual case or controversy between Plaintiffs and Fox (Doc. No. 28 at 7; Doc. No. 43-1). She also asserts that the requested injunctive relief would provide no additional relief other than that to which Plaintiffs are already entitled. (Id.) Defendant Fox's Affidavit establishes that each of the three Plaintiffs was offered, via letter, free implant removal services (Doc. No. 43-1), which is the only injunctive relief sought against Defendant Fox (Doc. No. 1, Count III). Fox essentially argues that Plaintiffs do not need a favorable decision in this litigation in order to receive the relief they seek.

The Court will set a hearing that all Plaintiffs, Defendant Fox, and their counsel shall attend, in order for the Court to question Defendant Fox, on behalf of the White County Department of Health, and Plaintiffs concerning this offer to remove the Nexplanon implants at no cost to Plaintiffs. The Motion to Dismiss filed by Defendant Fox will be taken under advisement until that hearing.

## Class Certification

Plaintiffs ask the Court to certify a class of persons who (1) were not in custody at the time of the filing of this action, (2) who received a Nexplanon implant in exchange for the offer of a

---

[12] Plaintiffs allege that Defendant Fox had an obligation to ensure the constitutionality of all health programs offered to inmates at the White County Jail, but the Complaint does not include Defendant Fox in its Counts for constitutional violations (Doc. No. 1, Counts I and II). In any event, there is no allegation that Defendant Fox controlled the other Defendants' alleged misconduct.

thirty-day reduction in jail time, (3) who received the Nexplanon implant while incarcerated at the White County Jail at any time during the period beginning October 9, 2016, and ending July 27, 2017. (Doc. No. 16 at 3).

To certify a class, the Court must be satisfied that Plaintiffs have met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Plaintiffs seek certification under Rule 23(b)(2) and Rule 23 (b)(3). Rule 23(b)(2) authorizes a class action if Rule 23(a) is satisfied and the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) authorizes a class action if questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

A class action will be certified only if, after rigorous analysis, the Court is satisfied that the prerequisites of Rule 23(a) have been met and that the action falls within one of the categories under Rule 23(b). Castillo v. Envoy Corp., 206 F.R.D. 464, 467-68 (M.D. Tenn. 2002); Burges v. Bancorpsouth, Inc., 2017 WL 2772122 at * 2 (M.D. Tenn. June 26, 2017). The decision whether to certify a class, committed to the sound discretion of the district judge, turns on the particular facts and circumstances of each individual case. In re Whirlpool Corp. Front-Loading Washers Product

Liability Litig., 722 F.3d 838, 850 (6th Cir. 2013). The parties seeking class certification bear the burden of showing that the requirements for class certification are met. Bridging Communities Inc. v. Top Flite Financial Inc., 843 F.3d 1119, 1124 (6th Cir. 2016); Skeete v. RePublic Schools Nashville, 2017 WL 2989189 at * 2 (M.D. Tenn. Mar. 21, 2017).

Here, the Court will address first the elements of commonality and typicality, because those issues are dispositive of this motion. To demonstrate commonality, Plaintiff must show that class members have suffered the same injury. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2555 (2011). Their claims must depend upon a common contention, factual or legal, that is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Id. at 2551; Food Lion, LLC v. Dean Foods Co., 312 F.R.D. 472, 483 (E.D. Tenn. 2016).

What matters to class certification is not just the articulation of common questions, but the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Wal-Mart, 131 S.Ct. at 2551. There need be only a single issue common to all members of the class. Emergency Med. Care Facilities v. BlueCross BlueShield of Tenn., Inc., 2016 WL 7429256 at * 4 (W.D. Tenn. April 15, 2016). The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. In re American Medical Systems, Inc., 75 F.3d 1069, 1080 (6th Cir. 1996); see also Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 543 (6th Cir. 2012) (presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct).

The claims of the representative party must also be typical of the claims of the class. The representative party must be able to fairly and adequately protect the interests of the class in order to meet the requirements of Rule 23(a). A plaintiff's claim is typical if it arises from the same event or practice or course that gives rise to the claims of other class members or if it is based on the same legal theory. Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 443 (S.D. Ohio 2009). The commonality and typicality requirements are closely related because they both help determine whether the claim of the named plaintiffs and those of the class are so interrelated that the interests of the absent class members will be protected. Id. at 444.

Here, as set forth above, Defendants' liability for unconstitutional actions depends on the extent of Defendants' alleged coercion, their alleged pressure on Plaintiffs and others to "voluntarily" get birth control implants in exchange for credits on their sentences. There are factual allegations about that alleged coercion. There are no allegations that each female inmate was treated the same or that each female inmate experienced the same alleged coercion in the same way. To be sure, common sense dictates otherwise.

The alleged common contention - that Defendants impermissibly pressured and coerced Plaintiffs into getting Nexplanon implants - cannot be determined once for all. Indeed, whether Defendants' actions were or were not sufficiently coercive to transform Plaintiffs' and the potential class members' voluntary consent into involuntary is uniquely an issue of fact, which may or may not have constitutional significance here. What is impermissible coercion will depend upon the particular circumstances of each alleged encounter with each Plaintiff and each prospective class member. Plaintiffs' claims may arise from the same alleged practice as those of other potential class

14

members, but whether that practice was such that it unconstitutionally made the inmate's consent involuntary requires a look at each particular circumstance.

For this reason, Plaintiffs have not satisfied the commonality and typicality requirements, and the Court cannot certify a class as requested. Plaintiffs' Motion to Certify a Class will be denied.

Conclusion

As set forth herein, Plaintiffs' Motion to Certify Class (Doc. No. 16) will be denied; the Motion to Dismiss filed by Defendants Benningfield, Daniels, Shoupe and White County (Doc. No. 21) will be granted in part and denied in part; and the Motion to Dismiss filed by Defendant Fox (Doc. No. 27) will be taken under advisement, pending a hearing on Plaintiffs' acceptance or not of Fox's offer to remove the implants at no cost.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE